IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GEICO GENERAL INSURANCE COMPANY, | ) ) ) | 8:16CV58 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | MEMORANDUM AND ORDER |
| DEPARTMENT OF THE NAVY MEDICAL CARE RECOVERY UNIT, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This is an uncontested interpleader action involving the proceeds of an automobile liability policy issued by Plaintiff, GEICO General Insurance Company. The proceeds of $100,000.00 have been paid into court, and GEICO and its insured have been discharged from any further liability. *See* Order entered on April 1, 2016 (Filing 14); Receipt and Notice of Deposit dated April 14, 2016 (Filing 36). Only two Defendants, the Department of the Navy, Medical Care Recovery Unit (Navy), and the Centers for Medicare & Medicaid Services (CMS), have claimed entitlement to the proceeds. In moving for summary judgment, Navy and CMS have stipulated that CMS should receive $93,000.00 of the interpleaded funds, that Navy should receive $7,000.00, and that any earned interest should be divided proportionately. CMS's and Navy's motion for summary judgment will be granted and a final judgment will be entered accordingly.

### *I. STATEMENT OF FACTS*

For purposes of the summary judgment motion, the court finds there is no genuine dispute as to the following material facts, as set forth in Navy's and CMS's supporting brief:

1. On November 26, 2013, Cecil Shaw was operating a motor vehicle in Adams County, Nebraska when he had a medical event leading to an automobile accident. (Filing 1-1, ¶ 17).

2. At the time of the accident, the vehicle operated by Cecil Shaw was insured by GEICO and contained personal injury coverage in the amount of $100,000 per person. (Filing 1-1, ¶ 18).

3. June Shaw, an occupant in the vehicle, sustained injuries as a result of the accident, and received medical treatment at various medical providers in Nebraska. (Filing 1-1, ¶ 19)

4. June Shaw was both a Medicare and Tricare beneficiary. (Declaration of John P Hannigan [Filing 43-1], ¶ 5 ("Hannigan Decl. ¶___")); (Declaration of David P. Swanson [Filing 43-2], ¶ 7 ("Swanson Decl. ¶___)).

5. As a Medicare beneficiary, June Shaw was entitled to conditional payment of covered items and services provided under the Medicare program. (Hannigan Decl., ¶ 5).

6. The Medicare reimbursement summary reflects conditional expenditures by Medicare to providers of services for the accident related treatment to June Shaw in the amount of $130,869.90 (Hannigan Decl., ¶ 6, Exhibit A).

7. Similarly, as a Tricare beneficiary, and under the facts of this case, June Shaw was entitled to payment of hospital/medical care and treatment for which the Government maintains an independent right to recover pursuant to 42 U.S.C. § 2651, et seq. (Swanson Decl., ¶¶ 5-9).

8. The Tricare payment log reflects expenditures by Tricare to providers of services for the accident related treatment to June Shaw in the amount of $10,060.44. (Swanson Decl., ¶10, Exhibit A).

9. GEICO commenced a Complaint in Interpleader in the District Court of Webster County, Nebraska seeking to pay its personal injury limits of coverage into the court for safekeeping, while allowing third parties claiming an interest in the policy proceeds to maintain a claim.

GEICO named various Defendants, including the Department of the Navy, Medical Care Recovery Unit, and the Centers for Medicare & Medicaid Services. (Filing 1-1).

10. The Navy and CMS removed the State court action to this Court on February 1, 2016. (Filing 1).

11. On March 9, 2016, the Navy and CMS filed an Answer to the Interpleader both seeking statutory reimbursement from the interpleaded funds for claims paid on behalf of June M. Shaw, Deceased. (Filing 9).

12. CMS seeks reimbursement in the amount of $130,869.90 pursuant to the Medicare Secondary Payer (MSP) statute. *See* 42 U.S.C. § 1395y(b). (Filing 9).

13. Similarly, the Navy seeks reimbursement in the amount of $10,060.44 pursuant to the Federal Medical Care Recovery Act (FMCRA). (Filing 9).

14. In the Federal Defendants' Answer, CMS asserted Cross-Claims against Co-Defendants Malcolm Shaw, Donna Kay Rainbolt, Ray Curtis Shaw, Phillip Shaw, Madonna Rehabilitation Hospital, Hastings Anesthesiology Associates, P.C., Hastings Fire and Rescue, Lifeteam Air Evac EMS, Inc., Bryan Medical Center West, Mary Lanning Healthcare, and John Does 1-20. (Filing 9).

15. On April 1, 2016, the Court granted leave to GEICO to deposit its policy limits of $100,000 with the Clerk of the Court. (Filing 14). Said funds were deposited on April 14, 2016. (Filing 36).

16. Because no party responded to CMS' Cross-Claims, on April 12, 2016, CMS moved for Entry of Clerk's Default against Co-Defendants Malcolm Shaw, Donna Kay Rainbolt, Ray Curtis Shaw, Phillip Shaw, Madonna Rehabilitation Hospital, Hastings Anesthesiology Associates, P.C., Hastings Fire and Rescue, Lifeteam Air Evac EMS, Inc.,[1] Bryan Medical Center West, and Mary Lanning

---

[1] CMS's motion to dismiss will be granted.

Healthcare. An entry of Clerk's Default was entered on April 13, 2016 against these parties. (Filing 35).

17. Similarly, CMS sought, and was granted, leave from the Court to serve John Doe Cross-Claim Defendants 1-20 by publication. (Filing 37)(Filing 39).

18. Service was effectuated on the John Doe Cross-Claim Defendants by virtue of publication in the *Daily Record* for six consecutive weeks: May 18, May 25, June 1, June 8, June 15, and June 22, 2016. (Filing 40)(Filing 40-1).

19. To date, no John Doe Cross-Claim Defendant has filed any response to CMS' Cross-Claim.

20. On July 26, 2016, CMS moved to dismiss its Cross-Claim against Lifeteam Air Evac EMS, Inc. without prejudice. (Filing 41).

(Filing 44).

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion" Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh

evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the burden of showing there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### B. Medicare Secondary Payer Statute (MSP)

Medicare is a voluntary, federally funded program of health insurance for the aged, disabled, and people with end-stage renal disease. 42 U.S.C. §§ 1395, *et seq.* When originally enacted, "Medicare was the primary payer for medical services supplied to a beneficiary, even when such services were covered by other insurance such as an employer group health plan or liability insurance." Zinman v. Shalala, 67 F.3d 841, 843 (9th Cir. 1995). However, in 1980, and in attempts to reduce steeply rising Medicare costs, Congress enacted the Medicare Secondary Payer legislation (MSP). Id.; 42 U.S.C. § 1395y(b). The MSP legislation requires Medicare to assume the role as the secondary payer when a beneficiary has primary insurance coverage, and "is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead." Evanston Hosp. v. Hauck, 1 F.3d 540, 544 (7th Cir. 1993). "Under the MSP legislation, when a Medicare beneficiary suffers an injury covered by a group health plan or liability, workers' compensation, automobile, or no-fault insurance, Medicare conditionally pays for the beneficiary's medical expenses." Zinman, 67 F.3d at 843; 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare is then "empowered to recoup from the rightful primary payer (or the recipient of such

payment) if Medicare pays for a service that was, or should have been, covered by the primary payer." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 875 (11th Cir. 2003).

Under the MSP legislation, Medicare may not pay for covered medical services if prompt payment is expected from the source with primary responsibility. 42 U.S.C. § 1395y(b)(2)(A)(i); 42 C.F.R. § 411.21; 42 C.F.R. § 411.50. If prompt payment is not expected, Medicare may make payment for the beneficiary's expenses, conditioned on later reimbursement from the primary payer. 42 U.S.C. § 1395y(b)(2)(B)(i).[2] Medicare may pursue recovery for its conditional payments through subrogation or through a direct right of recovery. 42 U.S.C. § 1395y(b)(2)(B)(i-iv); 42 C.F.R. § 411.24.

### *C. Tricare and Federal Medical Care Recovery Act (FMCRA)*

Tricare is a managed health care program for members of the uniformed services, retirees, and their dependents. *See generally Flores v. United States, No. 11-12119*, 2015 WL 3887537, at *1 (E.D. Mich. June 24, 2015). The United States, in situations creating a tort liability upon some third person, is authorized to recover the costs of medical expenses incurred as a result of treatment to Tricare beneficiaries. The Federal Medical Care Recovery Act (FMCRA) provides, in relevant part:

> In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under

---

[2] "Primary payer" means, when used in the context in which Medicare is the secondary payer, any entity that is or was required or responsible to make payment with respect to an item or service (or any portion thereof) under a "primary plan". These entities include, but are not limited to, insurers or self-insurers, third party administrators, and all employers that sponsor or contribute to group health plans or large group health plans. 42 C.F.R. § 411.21. "Primary plan" means, among other items, automobile or liability insurance. 42 U.S.C. § 1395y(b)(2)(A)(ii).

> circumstances creating a tort liability upon some third person…to pay damages therefor, <u>the United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished, to be furnished, paid for</u>, or to be paid for and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for.

42 U.S.C. § 2651(a) (emphasis added). To pursue its right to recover for medical expenditures, the United States may

> (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, against the third person who is liable for the injury or disease or the insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished or paid for by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease or the insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors.

42 U.S.C. § 2651(d).

### *III. DISCUSSION*

Both CMS and Navy have statutory rights to reimbursement from the interpleaded funds. No other party has asserted a claim to the proceeds. In fact, defaults have been entered on CMS's cross-claims against Malcolm Shaw, Donna Kay Rainbolt, Ray Curtis Shaw, Phillip Shaw, Madonna Rehabilitation Hospital, Hastings Anesthesiology Associates, P.C., Hastings Fire and Rescue, Bryan Medical Center West, and Mary Lanning Healthcare.[3] The court therefore finds CMS's claim to the interpleaded funds is superior to any claim that these defaulted Defendants have made or might make to the interpleaded funds.

It is undisputed that Medicare (CMS) has made conditional expenditures to the providers of medical services on behalf of June Shaw, in the amount of $130,869.90. It is also undisputed that Navy paid $10,060.44 in accident-related medical expenses on behalf of June Shaw.

Inasmuch as the interpleaded funds of $100,000.00 are not sufficient to fully reimburse these expenditures, "CMS and the Navy have agreed that in the event of successful recovery from the interpleaded funds, CMS would accept $93,000 and the Navy would accept $7,000. Should interest accrue on the interpleaded funds, CMS and the Navy agree to a 93% apportionment of the total funds to CMS and 7% apportionment of the total funds to the Navy. This Court is not requested to, nor need it, make a priority determination between CMS and the Navy as to the rights of reimbursement." (Filing 40 at CM/ECF p. 2, n. 2). It will be so ordered.

Accordingly,

---

[3] A default was also entered against Lifeteam Air Evac EMS, Inc., but CMS has since moved to dismiss without prejudice its cross-claim against this Defendant.

IT IS ORDERED that:

1. CMS's motion to dismiss without prejudice its cross-claim against LifeTeam Air Evac EMS, Inc. (Filing 41) is granted.

2. CMS's claim to the interpleaded funds is superior to any claim that Malcolm Shaw, Donna Kay Rainbolt, Ray Curtis Shaw, Phillip Shaw, Madonna Rehabilitation Hospital, Hastings Anesthesiology Associates, P.C., Hastings Fire and Rescue, Bryan Medical Center West, and Mary Lanning Healthcare have made or might make to the interpleaded funds.

3. CMS's and the Navy's motion for summary judgment (Filing 42) is granted, and the registry of the court is hereby directed to distribute $93,000.00 of the interpleaded funds to CMS, to distribute $7,000.00 of the interpleaded funds to Navy, and to distribute any interest earned on the interpleaded funds on a proportionate basis (*i.e.*, 93% to CMS and 7% to Navy).

4. Final judgment shall be entered by separate document and the clerk of the court shall proceed to close this file, including termination of Filing 10 (GEICO's motion to interplead and receive evidence for disbursement of funds).

DATED this 13th day of October, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge